**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

JESSICA HILL, an individual,

      Plaintiff,

v.

THE CITY OF FLORENCE, a municipal corporation; and
MICHAEL PATTERSON, an individual,

      Defendants.

_____

### COMPLAINT AND JURY DEMAND
_____

      Plaintiff Jessica Hill ("Ms. Hill" or "Plaintiff"), by and through counsel, Leventhal Lewis Kuhn Taylor Swan PC, submits her Complaint and Jury Demand ("Complaint") against The City of Florence and Michael Patterson as follows:

### PARTIES

      1.     Ms. Hill is an individual who is domiciled in the State of Colorado.

      2.     Defendant City of Florence (the "City") is a statutory city within the State of Colorado.

      3.     Defendant Michael Patterson ("Mr. Patterson") is an individual who is domiciled in the State of Colorado.

      4.     The City and Mr. Patterson are referred to collectively as "the Defendants."

## JURISDICTION AND VENUE

5.     This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action is brought, in part, under Title VII of the Civil Rights Act of 1964 ("Title VII").

6.     This Court has supplemental jurisdiction over Ms. Hill's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the Title VII claims that they form part of the same case or controversy.

7.     This Court has personal jurisdiction over the City because, among other things, the action arises out of events that occurred in the State of Colorado.

8.     This Court has personal jurisdiction over Mr. Patterson because, among other things, the action arises out of events that occurred in the State of Colorado.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful conduct complained of herein arose and occurred in the District of Colorado.

10.     Plaintiff exhausted her administrative remedies by timely filing a Complaint of Discrimination with the Colorado Civil Rights Division ("CCRD") (and by extension the Equal Employment Opportunity Commission) and filing this action with 90 days of receipt of a right to sue. A copy of the Notice of Early Right to Sue is attached hereto as **Exhibit 1**.

## GENERAL ALLEGATIONS

11.     On or about January 28, 2018, Ms. Hill began working for the City. Ms. Hill's most recent job title was, and continues to be, the Florence City Clerk.

12.     Since late 2011, Mr. Patterson was employed as the Florence City Manager.

13.     From the beginning of Ms. Hill's employment up to and until Mr. Patterson was finally terminated on or about August 31, 2021, Ms. Hill reported directly to Mr. Patterson.

*Mr. Patterson has a history of inappropriate behavior predating his employment by the City.*

14.     Mr. Patterson previously worked as the City Manager of the City of Redmond, Oregon.

15.     During his employment by the City of Redmond, Oregon, Mr. Patterson was charged with one count of felony fourth-degree assault and one count of misdemeanor fourth-degree assault against a woman with whom he was in a romantic relationship. *See* https://www.oregonlive.com/news/2008/12/former_redmond_city_manager_se.html.

*The City knew of Mr. Patterson's misconduct and hired him nonetheless.*

16.     In or around 2011, prior to hiring Mr. Patterson, the City performed a background check that contained information about Mr. Patterson's misconduct. The City knew about Mr. Patterson's history of misconduct before the City hired him.

17.     Evidence of Mr. Patterson's behavior and related complaints and charges are and were readily available with a simple internet search. *See Kevin S. Curtis v. City of Redmond and Michael Patterson*; Case No. CV-01525-TC (D. Ore.).

*The City was aware of serious allegations against Mr. Patterson but allowed him to maintain his employment.*

18.     In recent statements, the City attempts to assert that Mr. Patterson's conduct took City government by surprise. *See* https://theflorencecitizen.com/2022/01/21/city-council-releases-new-statement-regarding-former-city-manager/. This is false.

19.     In or around late 2019, Tammy Kibler ("Ms. Kibler"), another employee of the City, was sexually harassed by Mr. Patterson and then-Police Chief Mike DeLaurentis ("Mr. DeLaurentis").

20.     Ms. Kibler brought this harassment to the attention of the City. Ms. Kibler was

terminated in retaliation for reporting this sexual harassment.

21.     In or around November 13, 2019, the City settled the claim brought by Ms. Kibler. *See id.*

22.     Ms. Kibler was far from the only woman to be sexually harassed by Mr. Patterson. On information and belief, prior claims had been made against Mr. Patterson prior to 2019 of which the City was aware.

23.     Even after the City was made aware of Mr. Patterson's practice of abusing women, the City did not implement any supervisory protocol over him in an attempt to prevent his predatory behavior. The City allowed Mr. Patterson's abusive behavior to continue.

24.     Mr. Patterson did not experience any tangible adverse employment action after his abuse was brought to light. In fact, he was promoted, given pay raises, and hidden perks.

25.     Matthew Krob ("Mr. Krob") is the Florence City Attorney. He has held this position for a number of years, including during the pendency of Ms. Kibler's complaint.

26.     Mr. Krob failed to adequately address, much less prevent, future abuse after Ms. Kibler's and others' complaints.

27.     Mr. Krob's loyalty was to Mr. Patterson. As a further violation of his duty to the City, Mr. Krob secretly fed Mr. Patterson information about and reports made against Mr. Patterson. Perhaps this is unsurprising as Mr. Krob and Mr. Patterson often socialized outside of work.

28.     Since Mr. Krob was aware that Mr. Patterson was the primary decisionmaker on whether Mr. Krob kept his contract, Mr. Krob's primary focus was protecting Mr. Patterson.

29.     Mr. Krob is not alone. The City enabled Mr. Patterson's system of abuse. Mr.

Patterson's abuse occurred during working hours at City Hall. In fact, at Mr. Patterson's request, the City paid for and installed blinds in his office so as to allow him to engage in predatory behavior in his office.

30.     As Mr. Patterson was a supervisor in City government (in fact, as City Manager, he was the highest-ranking non-elected supervisor), the City is strictly liable for Mr. Patterson's abuse.

31.     The City did not take reasonable care to prevent and correct promptly any of Mr. Patterson's behavior.

32.     The City failed to provide corrective opportunities or take reasonable steps to prevent further illegal conduct on the part of Mr. Patterson.

33.     During his employment, Mr. Patterson had a pattern and practice of sexually abusing and harassing female employees. Ms. Hill is just one of many victims of Mr. Patterson's harassment and the City's knowing failure to respond.

*Ms. Hill was sexually harassed by Mr. Patterson.*

34.     During Ms. Hill's employment with the City, Mr. Patterson sexually harassed her via text messages and verbal comments.

35.     The text messages ran the gamut from fantasizing about Ms. Hill's attractiveness to explicitly asking her to have sex with him.

36.     As just one example, Mr. Patterson sent Ms. Hill a text message saying "You are so hot and yet so cute. The hair, face, breasts…and how hardworking and focused you are."

37.     Mr. Patterson asked Ms. Hill to have a threesome with him and his fiancé, Linda. He stated: "Linda has never been with a woman but loves to fantasize about having threesomes

with women and you have long been one of her favorite fantasies."

38.     Despite Ms. Hill's insistence that she did not want to have a relationship with him, Mr. Patterson would send messages saying, for example, "Damn you're hot! I know that we have to be careful at work but I have full intention to kiss you tomorrow."

39.     Ms. Hill explicitly told Mr. Patterson to stop this behavior. He refused.

40.     To make matters worse, in August 2021, Mr. Patterson sexually assaulted Ms. Hill. Mr. Patterson took Ms. Hill into his office, shut the door, closed the blinds (that the City had purchased at its expense at Mr. Patterson's request), pushed Ms. Hill against the door, and forced his hand down her pants onto her vagina.

41.     After Ms. Hill again refused Mr. Patterson's advances, Mr. Patterson retaliated against her by making false claims, including grotesque claims that Ms. Hill was being sexually inappropriate. It is disturbingly ironic that Mr. Patterson accused Ms. Hill of sexually inappropriate behavior.

42.     Ms. Hill engaged in a protected activity when she reported Mr. Patterson's inappropriate behavior.

43.     City officials who worked alongside Ms. Hill and Mr. Patterson knew of the abuse for months. They did nothing.

44.     Sean Garrett ("Mr. Garrett"), the former planning director and current interim city manager, knew of the abuse Ms. Hill was experiencing. Mr. Garrett knew of the abuse for several months. He did nothing to help Ms. Hill. Shockingly, Mr. Garrett is now the prime candidate to replace Mr. Patterson as the permanent city manager.

45.     Since Ms. Hill's claims have been made, Mr. Garrett has repeatedly exclaimed that

Mr. Patterson's victims of sexual harassment and sexual assault need to "move on" and "get over it."

46.     Lori Cobler ("Ms. Cobler"), the budget director and human resources director, also knew of the abuse Ms. Hill was experiencing from Mr. Patterson. Ms. Cobler knew of the abuse for several months. She failed to help Ms. Hill and failed to come forward.

47.     Shane Prickett, the current Florence Police Chief ("Chief Prickett") has known for years of Mr. Patterson's predatory behavior. In fact, Mr. Patterson targeted Mr. Prickett's wife. Evidence of this and other abuse is kept on cell phones used for city business.

48.     Despite actual knowledge of the abuse, Chief Prickett did nothing. He was more interested in rising through the ranks to become police chief than protecting women, including his own wife.

49.     On November 3, 2021, Mr. Patterson was charged with four criminal offenses: two counts of stalking – emotional distress (Colo. Rev. Stat. § 18-3-602(1)(c)), sexual contact – no consent (Colo. Rev. Stat. § 18-3-404(1)(a)), and providing alcohol to minors (Colo. Rev. Stat. § 44-3-901(1)(b)). Some of these criminal offenses are felonies.

*In or around September 2021, Ms. Hill retained counsel to represent her in her claims against Defendants.*

50.     Ms. Hill hoped to remedy this situation and continue her employment with the City. When counsel was first retained, they were in communication with Mr. Krob.

51.     Counsel sent Mr. Krob a letter on September 8, 2021 wherein Counsel outlined the harassment and assault Ms. Hill had suffered at the hands of Mr. Patterson. Mr. Krob was initially responsive.

52.     Mr. Krob then abruptly ceased all communication with counsel.

7

53.     Despite counsel's repeated attempts to contact him and resolve this matter, Mr. Krob failed to address the City's significant liability. He let the abuse fester.

54.     On October 29, 2021, Ms. Hill, through counsel, sent the requisite Colorado Governmental Immunity Act ("CGIA") Notice to Mr. Krob. Mr. Krob ignored it.

55.     Ms. Hill's attorneys filed the requisite Complaint of Discrimination with the CCRD on November 8, 2021. Mr. Krob ignored it.

56.     On January 20, 2022, Ms. Hill received a notice of right to sue from the CCRD.

57.     On January 20, 2022, Counsel emailed Mr. Krob to confirm that he was authorized to accept service of process on behalf of the City. Mr. Krob ignored it.

58.     Counsel has sent nearly a dozen evidence preservation demand letters to Mr. Krob. Other than a brief mention on January 28, 2022 stating that he will "address them individually," Mr. Krob ignored them.

59.     On information and belief, the City has already failed to preserve and protect the relevant evidence (despite express requests therefor) for which spoliation sanctions will be sought.

60.     Counsel sent two letters informing Mr. Krob of the unlawful retaliation Ms. Hill was experiencing at the hands of the City. Rather than addressing the substance of these reports, Mr. Krob joined the City in attempting to blame the victim.

*Defendants have retaliated against Ms. Hill.*

61.     After Ms. Hill repeatedly turned down Mr. Patterson's advances, he began making false statements about her.

62.     The City has never denied that Ms. Hill is good at her job. Furthermore, the City has not denied that Ms. Hill is a victim of Mr. Patterson.

63.     After Ms. Hill engaged in a protected activity by reporting Mr. Patterson's behavior, the City has retaliated against Ms. Hill.

64.     Without any legitimate proof, the City has accused Ms. Hill of leaking information discussed in executive sessions. This allegation if false. The allegedly leaked information is known by at least a dozen other City employees and elected officials.

65.     During the entirety of her employment, Ms. Hill has rarely been excluded from City Council executive sessions. After she complained about Mr. Patterson's sexual harassment, Ms. Hill has been frequently excluded from executive sessions without any explanation.

66.     This exclusion inhibits Ms. Hill's professional development and her ability to do her job. On information and belief, the City is restricting Ms. Hill's access to meetings and inhibiting her ability to perform her job duties in an effort to manufacture reasons to terminate Ms. Hill's employment.

*The City has a pattern and practice of condoning inappropriate, sexually harassing behavior.*

67.     On information and belief, newly elected Mayor Paul Villagrana ("Mayor Villagrana") makes sexually inappropriate comments about City employees. On one occasion, Mayor Villagrana stated that he enjoys watching Ms. Hill walk in front of him and often asks her to get coffee just so that he can do so.

68.     City residents are understandably upset. They feel that their City officials have deceived them and refused to address serious abuse. The residents are correct.

69.     Mr. Patterson's abuse and the City's apathetic response thereto has been a frequent topic of discussion at City Council meetings. Mr. Krob's failure to respond to the allegations by Ms. Hill and other victims of Mr. Patterson's abuse has likewise been a topic of discussion at City

Council meetings.

70. City Council members themselves are upset by the way the abuse has been handled by certain City officials, including Mr. Krob. By way of example, on January 3, 2022, Councilmember Allen Knisley stated on record that "Matt [Krob] has misled us several times." *See* https://theflorencecitizen.com/2022/01/05/city-council-meeting-1-3-22/.

<div align="center">

**FIRST CLAIM FOR RELIEF**
*Discrimination Under Title VII of the Civil Rights Act of 1964*
*(42 U.S.C. § 2000e-2(a))*
**Against All Defendants**

</div>

71. Ms. Hill incorporates by reference all preceding paragraphs of this Complaint.

72. At all relevant times, the City was an employer within the meaning of Title VII.

73. 42 U.S.C. § 2000e-2(a) provides that: "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

74. Ms. Hill is a member of a group of persons protected under Title VII. Namely, she is a female.

75. Ms. Hill is competent and qualified for her position of City Clerk.

76. Ms. Hill has suffered and is suffering harassment by Defendants.

77. The disparity in treatment between Ms. Hill and her male coworkers is based, at

<div align="center">10</div>

least in part, on Ms. Hill's gender.

## SECOND CLAIM FOR RELIEF
### *Sexual Harassment Under Title VII of the Civil Rights Act of 1964*
### *(42 U.S.C. § 2000e-2(a))*
### Against All Defendants

78.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

79.     At all relevant times, the City was an employer within the meaning of Title VII.

80.     42 U.S.C. § 2000e-2(a) provides that: "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

81.     Ms. Hill is a member of a group of persons protected under Title VII. Namely, she is a female.

82.     Ms. Hill was sexually harassed by Mr. Patterson.

83.     The harassment Ms. Hill experienced was based, at least in part, on Ms. Hill's sex.

84.     The harassment was unwelcomed.

85.     The harassment was severe and pervasive.

**THIRD CLAIM FOR RELIEF**
*Retaliation Under Title VII of the Civil Rights Act of 1964*
**(42 U.S.C. § 2000e-3(a))**
**Against All Defendants**

86.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

87.     At all times relevant to this Complaint, the City was an employer within the meaning of Title VII.

88.     42 U.S.C. § 2000e-3(a) provides that: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."

89.     Ms. Hill is competent and qualified for the position of City Clerk.

90.     Ms. Hill engaged in a protected activity for purposes of 42 U.S.C. § 2000e-3(a) when she pursued her rights under Title VII.

91.     Defendants have made false comments about Ms. Hill, including allegations that Ms. Hill is "leaking" information that was discussed in City Council meetings.

92.     The retaliatory behavior by the City is sufficiently professionally detrimental to "dissuad[e] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 543 U.S. 53, 68 (2006).

93.     A causal connection between Ms. Hill's protected activity and the adverse action

can be inferred based on temporal proximity because Defendants began this retaliatory behavior immediately after Ms. Hill complained of Mr. Patterson's harassment and the City's failure to address the problem.

94.     The City's retaliatory conduct actually and proximately caused losses and injuries to Ms. Hill, including loss of income, in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
*Colorado Anti-Discrimination Act*
**Against All Defendants**

95.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

96.     Ms. Hill is a protected person under Colo. Rev. Stat. § 24-34-402 because of her status as a female.

97.     In violation of the Colorado Anti-Discrimination Act, Defendants discriminated and retaliated against Ms. Hill as set forth in the preceding paragraphs of this Complaint.

98.     Defendants' unlawful conduct in terminating and retaliating against Ms. Hill actually and proximately caused losses and injuries to Ms. Hill, including loss of income, in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
*Outrageous Conduct/Intentional Infliction of Emotional Distress*
**Against All Defendants**

99.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

100.     Defendants engaged in extreme and outrageous conduct by, among other things, subjecting Ms. Hill to defamation and the inability to complete her job duties. Such conduct includes, but is not limited to, the specific instances described above.

101.     Defendants engaged in such conduct recklessly or with the intent to cause Ms. Hill

severe emotional distress.

102.   Ms. Hill has suffered damage as a result of Defendants' outrageous conduct in an amount to be proven at trial for which Defendants are liable.

### SIXTH CLAIM FOR RELIEF
*Civil Assault*
**Against Mr. Patterson**

103.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

104.   Mr. Patterson intended to cause an offensive or harmful contact with Ms. Hill or intended to place Ms. Hill in apprehension of such contact.

105.   Mr. Patterson placed Ms. Hill in apprehension of immediate physical contact.

106.   The contact was harmful and offensive to Ms. Hill.

### SEVENTH CLAIM FOR RELIEF
*Civil Battery*
**Against Mr. Patterson**

107.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

108.   Mr. Patterson's act resulted in physical contact with Ms. Hill.

109.   Mr. Patterson intended to make harmful or offensive physical contact with Ms. Hill.

110.   The contact was in fact harmful and offensive.

### EIGHTH CLAIM FOR RELIEF
*False Imprisonment*
**Against Mr. Patterson**

111.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

112.   During the incident when Mr. Patterson locked the door and sexually assaulted Ms. Hill in or around August 2021, Mr. Patterson intended to restrict Ms. Hill's freedom of movement.

113.   Mr. Patterson directly or indirectly restricted Ms. Hill's freedom of movement for

14

a period of time.

114.   Ms. Hill was aware that her freedom of movement was restricted and felt like a hostage – she was unable to safely leave Mr. Patterson's office.

115.   Ms. Hill has suffered damage as a result of Mr. Patterson's false imprisonment of her in an amount to be proven at trial for which Defendants are liable.

<div align="center">

**NINTH CLAIM FOR RELIEF**
*Negligent Hiring*
**Against the City**

</div>

116.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

117.   Mr. Patterson was an employee of the City at the time he was harassing Ms. Hill.

118.   The City owed its employees, including Ms. Hill, a duty of care.

119.   The City breached its duty of care when it hired Mr. Patterson despite the fact that the City knew or should have known that Mr. Patterson had a history of abusing and sexually harassing women.

120.   Ms. Hill has been damaged as a result of the City's negligence.

121.   The City's decision to hire Mr. Patterson caused Ms. Hill's injury.

122.   Ms. Hill has been damaged as a result of the City's negligence in an amount to be proven at trial for which the City is liable.

<div align="center">

**TENTH CLAIM FOR RELIEF**
*Negligent Supervision*
**Against the City**

</div>

123.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

124.   Mr. Patterson was an employee of the City at the time he was harassing Ms. Hill.

125.   The City had a duty to supervise Mr. Patterson.

126.     The City did not supervise, or negligently supervised, Mr. Patterson.

127.     The City's negligence caused Mr. Hill's injury.

128.     Ms. Hill has been damaged as a result of the City's negligence in an amount to be proven at trial for which the City is liable.

<div align="center">

**ELEVENTH CLAIM FOR RELIEF**
*Negligent Retention*
**Against the City**

</div>

129.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

130.     Mr. Patterson was an employee of the City at the time he was harassing Ms. Hill.

131.     The City owed a duty of care to its employees, including Ms. Hill.

132.     The City breached that duty by retaining Mr. Patterson even though the City knew or should have known of Mr. Patterson's dangerous sexual practices.

133.     The City had actual knowledge of Mr. Patterson's practice of sexual harassment after the City settled claims with Ms. Kibler in or around 2019.

134.     The City's breach caused Ms. Hill's injuries.

135.     Ms. Hill has been damaged as a result of the City's negligence in an amount to be proven at trial for which the City is liable.

<div align="center">

**TWELFTH CLAIM FOR RELIEF**
*Defamation*
**Against Mr. Patterson**

</div>

136.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

137.     Mr. Patterson made defamatory statements about Ms. Hill (including, among others, that she was in a sexual relationship with an officer of the Florence Police Department) and have published false information about Ms. Hill's conduct to numerous individuals in Florence.

138.    The false statements have resulted in actual damage to Ms. Hill.

139.    At the time of publication, Mr. Patterson knew the statements were false or Mr. Patterson made the statements and allegations with reckless disregard to their falsity.

140.    As a result of the defamatory acts on the part of Mr. Patterson, Ms. Hill has suffered significant damages including, but not limited to, reputational harm, emotional distress, and nominal damages.

<u>THIRTEENTH CLAIM FOR RELIEF</u>
*Defamation Per Se*
**Against Mr. Patterson**

141.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

142.    Mr. Patterson made defamatory statements about Ms. Hill and has published false information concerning Ms. Hill's conduct.

143.    The false statements have resulted in actual damage to Ms. Hill.

144.    At the time of publication, Mr. Patterson knew that the statements were false or Mr. Patterson made the statements and allegations with reckless disregard to their falsity.

145.    The statements were defamatory as to Ms. Hill's profession and thus constitute defamation *per se*.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Ms. Hill requests this Court grant the following relief:

1.    Judgment in her favor on her claims for relief;

2.    Nominal, pecuniary, actual, and compensatory damages;

3.    Costs and expenses of this action along with attorneys' and experts' fees; and

4.    Punitive and/or exemplary damages.

17

## DEMAND FOR JURY TRIAL

Ms. Hill hereby demands a jury trial on all issues so triable.

Respectfully submitted this 31st day of January, 2022.

<div style="margin-left: 40%;">

LEVENTHAL | LEWIS
KUHN TAYLOR SWAN PC

*/s/ Andrew E. Swan*
Michael D. Kuhn, #42784
Andrew E. Swan, #46665
Hannah E. Herbst, #56418
620 North Tejon Street, Suite 101
Colorado Springs, CO 80903
Telephone:     (719) 694-3000
Facsimile:     (866) 515-8628
Email:     aswan@ll.law
             mkuhn@ll.law
             hherbst@ll.law

*Attorneys for Plaintiff*

</div>

Plaintiff's Address:
824 West 2nd Street
Florence, CO 81226